12-2201. Ms Burke, Mr. S morning. Justice O'Conno Judge Ambrose and Judge Smith. May it please the court. My name is Christine Burke with the law offices of Carf, Carf and Cerruti, and I represent the appellant in this matter, Lovat Saunders, and I would respectfully request five minutes for rebuttal time. Granted. No problem, Your Honors. This is a clear case of religious discrimination under both Title seven and the N. J. Ladd. There are three specific issues before this court today. The first two both bear on whether or not my client can establish a prima facie case of religious discrimination, and the third has to do with pretext. I would submit to this court that these the facts of this case and the ability to establish the prima facie case and pretext are inextricably intertwined. You're arguing that what happened on the day after the person was hired creates the inference that he was discriminated against primarily because of his attire when he ran into. Is that apothecary site pronounced? It's David Apotheker, Your Honor. So he runs into the head of the firm, Mr Apotheker. And so there is that argument, but there also is balanced against that, that there was a background check that needed to be done. He was told that needed to be done. And it turned out that he had a prior crime, which was it a felony? It was a felony, yes. And he was ordered also to pay restitution of what, $12,000? Correct. And so they came in and they said to him that something's come up on your background check, and therefore we can't have you here. And then your argument then becomes, but there are three other people who are there who have had criminal records. Why were they allowed to stay and he is not? Is that it? That's part of the argument, Your Honor. Go ahead, Brooks. Well, could I take you back to what you just said before the question? Because I think all of this is of a piece. You were starting to say that the prima facie case and the pretext are intertwined. And I'm wondering if what you're referring to there was qualified for the position prong of the prima facie case. Because the district court here made two determinations, obviously, against your client. In the first instance, that a prima facie case wasn't made out, usually an early, and excuse me, usually an easy burden to overcome. But the more intensive analysis coming farther downstream when the burden shifts, burden of production shifts, right? Correct. So you are then focusing, as Judge Ambrose has suggested, on the qualification prong of the prima facie and the evidence you have to suggest that others who had the same difficulty you would suggest in their background as Mr. Saunders were hired to retain and he was not. My position, that's correct, Your Honor. My position is that the facts cannot be separated when you analyze the objective qualifications or the pretext section. The district court impermissibly weighed Evans and made credibility determinations about how this employer ought to run a debt collection business. He indicated that it raises serious concerns to have someone with a theft conviction working in the debt collection industry. However, a fact finder could ask how it is that Mr. Apotheker could allow another candidate to work with a theft crime. Weren't there significant differences between the individual's background, specifically the offenses which showed up on those background investigations? They're all different, but the level of the severity and difference, in fact, wasn't Mr. Saunders the only one with a felony theft conviction. But is that the reason why he wasn't hired? I can just answer my question. Was he the only one with a felony theft conviction? There's actually an issue in the record about whether or not Derone Wilson has, I don't know the record's silent, he has a theft conviction that he said he disclosed during the interview with HR for receipt of stolen property. And so the record's silent whether or not that's a felony. Is that the theft of utilities? They only know about the theft of utilities, at least in the record. They dispute that during... Theft of utilities, receipt of stolen property, and it was, I guess, also a drug related offense. Correct. Were any of those felonies, were they misdemeanors? That's, the record is silent on that. What the record is not silent on, though, is that Mr. Saunders' felony record was for what appeared as retail theft. And according to the record, that interested Mr. Apotheker enough to take a closer look, right? Isn't that what the record says? But did it interest him? Just answer my question, please. I'm trying to get through, I'm trying to walk my way through. He did not know it was a felony, Your Honor, at the time that he let my client go. He didn't even know, according to his account, what retail theft was. That's correct. Right? So he dug deeper because retail theft under Pennsylvania law includes every little example of shoplifting that there is. He did not know that there was a $18,000 retail theft involving a jewelry business, right? He discovered the basic facts surrounding the offense, yes. Were they the basic facts? That's correct. Yes. Along with that, a $12,000 restitution order as part of the sentence. That's correct, but according to Mr. Apotheker himself, it wasn't the theft, that he has no qualms about theft, that doesn't concern him. It was really, quote-unquote, his issue that my client did not pay for the restitution. What I submit to this court is that a jury must first conclude that even running a criminal background check is a criterion for hire for debt collectors because the evidence in the record suggests that he was not regularly running criminal background checks for all of his employees. And here, my suggestion is he's using it to vet candidates who are members of protected classes in that he didn't run the check until after my client was hired. He didn't run the check? I thought the check was requested on the 19th, and they said to him, remember this, you're being hired in effect conditionally subject to a background check. The district court relied on the application for employment in support of that, which doesn't say anything about a criminal background check. It doesn't ask for information related to that. I think it's, well, whatever background check is, I assume it would be to see if he has a record. But it's superfluous language. Just because they put in the offer letter that your employment is conditioned on a successful criminal background check doesn't mean that they actually run them, and in fact, they weren't routinely running them. It clearly indicated that the background checks with a criminal background check were discretionary with the employer, right? It said we may. Based on what? I asked the question, she answered. No, they're not. Isn't that what the record showed? That they're discretionary? No, Your Honor. Doesn't the record demonstrate that the employer may request a criminal background check? Isn't that what the form of your... Are you referring to the offer letter of employment? Isn't that what the form your client signed says? Yes, Your Honor. Thank you. The point here is that most employers, probably with this kind of record, would not hire someone regardless of religion. Your point, your best argument has to be that there was a hit-or-miss policy or non-policy of doing background checks, and that when you look at the other people that were, you have three comparators, and that they're hired and stayed on despite the fact that it was known that they had some type of criminal record. The question is, here, is it so significant that it doesn't make any difference? Because you said it was a felony, and I guess maybe the key point would be restitution. The felony should be discounted because initially they did not know that it was a felony, and when they answered the complaint and we indicated that my client... No, that's correct. They didn't know whether it was. When they answered the complaint and we indicated he was fired for criminal charges or criminal conviction, they said, denied as stated, he was terminated for his felony conviction, which can't even be accurate because they didn't know that it was a felony until litigation ensued. Then in sworn interrogatories, they said he was terminated for including but not limited to his criminal record, including but not limited to his failure to make restitution. The David Aguilera, who was a supervisor in on the decision to terminate, said our real issue was theft, and had I known that Jerome Wilson had been convicted of a theft crime, I would not have recommended him for hire. He would have been employed. So if there's no state policy procedure, then there's no objective criterion to measure his actions, and it should be analyzed in the pretext section, and determining what is more severe or less severe is within the province of a fact finder, not for us to determine how an employer should operate his business since he has no consistency in measuring which applications preclude, criminal convictions preclude, employment with his firm. Okay, thank you. If appears I'm out of time, I'll follow up on rebuttal. Thank you. Get you back on rebuttal. Thank you. Mr. Schoenberg. Good morning, Justice O'Connor, Judge Ambrose, Judge Smith. I'm delighted to be here. I guess the first question, just as a fact, did the Pothica firm have a firm policy of running background checks on every potential candidate? Yes, the policy was somewhat in flux, as the record shows, because a new hiring manager or HR manager had just come on board. The policy was not in writing, though, was it? No, no, sir, but the... You'd be in a much stronger position here, would you not, if your client had an extant policy that declares that we will not hire anyone with a felony record? Perhaps, but that was not the policy of the employer. The policy of the employer wasn't limited to a felony, and I believe Mr. Pothica testified that whether Mr. Saunders had a felony was not determinative. It was determinative in the mind of Mr. Saunders, who testified that a felony retail theft conviction is disqualifying, and based on his testimony alone, I believe the plaintiff could not have made out a prima facie case. I thought he testified that at first he didn't even know what retail theft was, which caused him to dig deeper into this background. Who are you At first he was not sure, and therefore he dug deeper, which is clearly within the province of an employer, particularly in the debt collection industry, and in particular Mr. Pothica's clients are banks. So it is incumbent upon an employer in such factual scenario to dig deeper, and that is what Mr. Pothica did. With regard to whether... Just stop on that one. It's incumbent on employer's firms to dig deeper. Since when? Because you're citing the Consumer Financial Protection Bureau, correct? Yes, although not exclusively that. I was going to say, because that wasn't even in play at the time of this incident. Yes, but Mr. Pothica had to abide by standards set by... But in 2010 he didn't have to abide by a standard that wasn't yet in effect. Well, he had to abide by standards set by his bank clients, and bank clients... Is there anything in the record about standards of his bank clients? Anything at all? What's in the record is that debt collectors collect debts from vulnerable consumers whose private financial data and social security numbers are accessible... So I take it your answer is no. No, I think that does establish a standard. There's a definite lack of yes and no responses in this oral argument. The standard is set by the banks. Banks are subject to a 10-year... Is there anything in the record about that? Yes. We cite to federal law that prohibits banks from employing anybody with a felony conviction for 10 years. That's the standard that debt collectors observe. What did Mr. Pothica know about the background and criminal record of Mr. Saunders when he made the determination that Mr. Saunders should be discharged? On May 20th. On May 20th, the day after. He knew of a retail theft conviction. He knew of a failure to pay restitution in excess of $10,000. What Mr. Pothica did not know at the time he made the decision that $10,000 is a dividing line under Pennsylvania law between misdemeanor and felony convictions. For Mr. Pothica, the difference of whether it was $10,001 or $9,999 is immaterial. We have a retail theft conviction combined with a failure to pay court-ordered restitution. Qualitatively different than the three persons that Mr. Pothica's firm did hire, who appellant wishes to compare himself to. To me it's apples and oranges, and Mr. Pothica is obviously entitled to make an individualized assessment. He did so, and the appellant is not qualified, does not get to the burden-shifting section of the law. Were there any other employees aside from Saunders that were not hired on account of their criminal background? Is there any evidence in the record? The record doesn't say one way or the other. So we have only four folks, three comparators, and then Mr. Saunders, and the three folks, Wilson, West, and Dickerson, they were kept on? Yes. I mean, that's the problem. I mean, the question there is, even if they had a policy, are they And the real question is, does this get to a jury? And it is, you're in a tough position when you have three people, especially with Wilson's record, that involved, in effect, an honesty, and you have him kept on, and this person kept away, and it may be, maybe and maybe not, that it was because Apotheker was taken, quote, taken aback, close quote, by the religious garb that was worn by Mr. Saunders. It is also undisputed that Mr. Apotheker knew before the hiring decision was made that Mr. Saunders wore Muslim garb to both interviews. Do these folks appear in court, or do they normally just make phone calls? I'm sorry? In other words, in the collection efforts, is it primarily making phone calls, or is it also suing and appearing in court? Both, although the role of the debt collector is phone work. So Saunders was hired as a debt collector? Yes, particularly for bank paper, and Saunders testified that having a felony retail theft conviction, this is a quote from the record, the appendix, page 36, that would be the only thing that would stop you from working a particular kind of paper. My point being, it's an undisputed material fact that he was not qualified. I don't see how he overcomes that element of the prime facie case. Well, Wilson wasn't qualified either, was he? Well, Mr. Apotheker made an individualized, totally permissible determination that the absence of failure to pay court-ordered restitution, the type of offense committed, the lapse of time with the felony drug offense being nine years, as the EEO subsequently... But he also was convicted of theft of utilities and receipt of stolen property. The theft of utilities was deemed a minor offense. These are case-by-case, and this goes to my question, my answer to Judge Smith. A case-by-case determination is a policy, and entirely permissible, in fact, encouraged by the EEOC. The fact that it's verbal, the Conway court in the Eighth Circuit dealt with in 2010... A case-by-case determination is a policy. Absolutely, and a practice. Endorsed, encouraged by the EEOC subsequently in its guidance. Sounds like Wal-Mart versus Dukes. Well, individualized determinations have been approved in various contexts. Obviously, under the Americans with Disabilities Act, the only thing an employer does is engage in a case-by-case determination and individualized assessment. Mr. Schoenberg, I'm hung up on the prima facie case here. I think Ms. Burke has a good point that the prima facie case qualified prong really is intertwined with the later downstream analysis with respect to the reasons that you're client comes forward with to discharge Mr. Saunders or discontinue his employment. And we've said many times what an easy burden, initially, a prima facie case is here. How can the district court have determined that the prima facie case was not met? Whereas here, you had, despite what you've suggested here, you had no policy. You had case-by-case determinations. Doesn't that require a conclusion that the prima facie case showing has been made and that you then must go to the next step in the burden shifting process where the prior records and the backgrounds of these imperators are looked at and analyzed? No, Judge Smith, because doing so would take away the latitude and the ability of the employer to make a case-by-case determination. Well, you may still win. You may still win. You just have to reach that stage by a determination that, in the first instance, the prima facie case has been made up. Judge Smith, I will agree that there's no evidence in the record to establish pretext with regard to the proffer justification in the next phase of the analysis. I agree to that. But my point remains, we do not reach that level because the employer is free and the Supreme Court has endorsed, on several occasions, individualized assessments in this instance to determine the qualification of someone and, therefore, making that a prima facie case. And, for example, Justice O'Connor authored an opinion in 2003 in the affirmative action context, a case in which she wrote an opinion holding that an individualized assessment survives the strictest scrutiny under an analysis of an affirmative action plan. So here we have a much lower standard, not strict scrutiny. So the employer ought to be able to engage in that case-by-case analysis. It's endorsed by the EEOC. It's not used for any abusive matter. The Supreme Court, in 2011, in the NASA case, said that an employer is perfectly within its rights to determine who's a reliable law-abiding applicant. Let's assume for the moment that you're at least partially correct. You have the right, or you at least have the practice, of letting some people in and not letting others in. Assume for the moment there was also an aspect where it comes out that Mr. Rapothiker has said, I don't want anybody dressed like that to be here. Should this not then get to the next level? At least let the jury sort it out? Why are we, as a court of appeals, being asked to sort something out that normally is a fact issue for a jury to deal with? The facts you hypothesized don't exist in this case. To the contrary, Mr. Rapothiker is quoted as saying in his deposition, it's a matter of record, is there anything we can do to provide an accommodation for the then-applicant, Mr. Saunders? So, under your hypothetical, sure, if an employer, a decision-maker, makes such comments, then yes, the matter should go to a jury, but that's not the set of facts here. I also would like, in my remaining time, to make another point. Well, just before you do that, I mean, you said he wasn't qualified. Correct. But if he is not qualified, how is Mr. Wilson qualified? Because the criminal offenses that Mr. Wilson was convicted of did not rise to the level in the employer's judgment of an above-average risk of recidivism, which is really what we're talking about. When an employer undertakes an analysis of someone's criminal background, the employer is saying, this person is not an above-average risk to invade consumers' protected confidential information. This applicant is an above-average risk, and Rapothiker made a determination that the failure to pay restitution was a red flag. The argument you just made to me may be a very good argument, but wouldn't that be a – isn't the proper venue a jury? No, because the employer, in the first instance, still has the right to make that determination. That determination is only subject to jury inquiry if there is evidence of discrimination, of religious discrimination. And all that Ms. Burke has to put forward is an inference of discrimination. She doesn't have to – the prima facie case is normally not that difficult to get a verdict. Which is why I can't understand why you won't concede the prima facie case and let it be battled out in the burden-shifting process, where it seems to me your case is a lot stronger. Judge Smith, the reason I'm not conceding the prima facie is because in addition to establishing his qualifications, he had to show an inference of discrimination based on the alleged comparators, none of whose religious faiths are a matter of record. Two of the three of whom gave certifications. How do the comparators – explain how the comparators come into the prima facie case analysis? The fourth prong of the prima facie case is the complaining party has to give – set forth facts that create an inference of discrimination. The Third Circuit typically uses a comparator analysis. So all Saunders had to do here was say this person was hired and had a theft record. This person was hired and had a drug conviction. This person was hired and had – that's all that has to be shown. And then – and they weren't discharged. You get into the real comparison later on in the analysis when the burden of production shifts, right? Not exactly, Judge Smith, because the inference is drawn when you compare the protected person with – All the inference does is cause the burden of production to shift. That's all. Judge Smith, there's no evidence that the three comparators were of any religious faith. In order to make an inference of discrimination, you have to show – the appellant needed to show that the alleged comparators were not of the Muslim faith. There's no evidence in the record of what their faith is. Someone's appearance is not a basis to make a determination that these folks are Christian or Buddhist or Jewish or whatever. That's an impermissible basis. You wanted to make – give you two minutes to make your other point you wanted to make. Yes, thank you. Even if the appellant established the relatively low threshold for a prima facie case, there's no evidence in the record of pretextual arguments made by Apotheker for why this person was discharged. The person had a criminal background that Apotheker deemed was an above-average risk. And by comparison with the others, none of whom failed to make in excess of $10,000 in court-ordered restitution, none of them had a felony conviction for retail theft. And Apotheker's point was this person is an above-average risk. There's no evidence of pretext to undermine the business justification, the business rationale proffered. So if we do move downstream, as Judge Smith suggests, you find no – Which begs the question, wasn't Mr. Wilson an above-average risk? No, no, not at all. If you read the EEOC guidance, which has been published subsequently to the district court's opinion, you look at the severity of the criminal conviction, the lapse of time. You're trying to assess the likelihood that someone would act again criminally. And Apotheker's determination? Apotheker's determination is only subject to second-guessing if there's evidence of pretext. It's not subject to second-guessing just because an appellant wants to get to a jury. There has to be evidence that Apotheker's motive was pretextual. There's no evidence in the record of pretext. All right. Thank you very much. Thank you very much. We'll hear from Ms. Burke on rebuttal. Judge Smith, I just briefly wanted to address something you asked me earlier and I hesitated to answer. Because you asked, isn't it true that they may request a background check? On page 270 of the index, the superfluous language about their conducting background checks isn't a may. It states the firm will conduct a background check when you are hired and you understand, et cetera, this is a condition of employment. However, the evidence shows that this was not the tradition that was followed in the firm. And Mr. Apotheker acknowledged that only within the last two years, which is vague, did he start running criminal background checks. The evidence in the record also suggests that at the time that Lynn Anderson Downs was hired, which was about 10 or so days before Mr. Saunders started, she was not running any criminal background checks despite the fact they were doing a lot of, quote, unquote, hiring. She herself was not subject to a criminal background check. So let's go to the point that Judge Smith was making. Let's assume for the moment you have a prima facie case and you go to the second prong. And what was the reasoning that they gave? They gave, well, that this was a significant criminal record and they made a determination in their discretion, but with good reason that this disqualified Mr. Saunders from being a debt collector. You then have to come back in the third prong and show that that was a pretext for really, what they really did was they got rid of him because he was Muslim, but primarily because he was Muslim in a particular type of attire. The Third Circuit has made it very clear that at the pretext stage, a plaintiff could submit evidence that a fact finder could disbelieve the asserted reason. And I would say that we are impermissibly weighing the evidence that a fact finder could and reject the reasons asserted in that they're shifting and conflicting. Why is it anything other than sheer speculation the jury is being asked to engage in with respect to what Mr. Apotheker thought about the background investigation's results, specifically the prior record? Well, this is not a direct evidence case, so you're not going to find any statements of his internal thoughts of a discriminatory intent. I'm aware of that, which of course begs the question, what is the circumstantial of it? That's where the prima facie case is so crucial. No, no, no, no. The prima facie case only gets you down the road. The fourth prong for the comparators, circumstances giving rise to the inference of discrimination is the comparators. If the prima facie case is a low hurdle and the inference of discrimination is deemed to be met here,  you really have to give a good reason as to why it would be quite plausible that this person was discriminated against because of his religion. The plaintiff or the appellant here is permitted to use evidence from this prima facie case in order to establish a pretext. He can, but doesn't the burden become more at the third step than it does at the first step? The burden shifts back to the plaintiff to prove that religion could be a motivating factor, and based on the fact that there are three other individuals whose religions are unknown and they're not, at least in Apotheker's mind, part of the protected class, which I would like to address because the way that appellees frame the argument is that an employer could have an interview with a woman who's visibly pregnant, clearly knows that she's pregnant. She's not hired because she has a criminal record. The same day hires another woman with a criminal record but not showing, and that woman's pregnant. Then does that negate the fact that there could be pregnancy discrimination there? The question here is beyond the belief that Mr. Saunders had that he was discriminated against or could have been discriminated against because of his religion, what other evidence is there in the record that might tend to show that? There's a circumstantial evidence of disparate treatment which cannot be ignored. What is it? That's what I'm asking. The hiring other employees who are not members of the protected class. He allowed three other employees, all following Mr. Saunders' termination. None of whom had a felony, is that correct? One did have a felony, yes. Was Wilson's a felony? No, Aranda West was a felony. Okay. Daron Wilson was for the differing theft charges, and Latoya Dickerson was for driving with a suspended license in addition to theft. West was a drug felony, is that right? Aranda West, yes. Okay. Just for clarification, you and I, I think we're talking about two separate documents. Sure. Because the application for employment, which appears at 289 and 290 of the appendix, 290, the last paragraph, is what authorizes the prosecutor to conduct a comprehensive review. The investigation may include a consumer report, address verification, social security number, and a criminal record investigation. That's what Mr. Saunders signed. May it? Yes, Your Honor. Any additional questions? Any questions? No. Thank you very much. Thank you. Thank you to both counsel for a well-presented argument. We'll take the matter under advisement.